

**United States Department of Justice**

*United States Attorney*
*Southern District of West Virginia*

*Robert C. Byrd United States Courthouse*          *1-800-659-8726*
*300 Virginia Street, East*                                      *304-345-2200*
*Suite 4000*                                              *FAX: 304-347-5104*
*Charleston, WV 25301*

August 5, 2024

Rachel E. Zimarowski, Esq.
Assistant Federal Public Defender
3400 Robert C. Byrd U.S. Courthouse
300 Virginia Street, East, Room 3400
Charleston, West Virginia 25301

      Re:  United States v. Donald A. Ennis
          Criminal No. 2:24-cr 129    (USDC SDWV)

Dear Ms. Zimarowski:

    This will confirm our conversations with regard to your client, Donald A. Ennis (hereinafter "Mr. Ennis"). As a result of these conversations, it is agreed by and between the United States and Mr. Ennis as follows:

    1.   **CHARGING AGREEMENT.**  Mr. Ennis agrees to waive his right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a two-count Information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

    2.   **RESOLUTION OF CHARGES.**  Mr. Ennis will plead guilty to two Counts of 18 U.S.C. § 1343 (wire fraud) as charged in said Information.

    3.   **MAXIMUM POTENTIAL PENALTY.**  The maximum penalty to which Mr. Ennis will be exposed by virtue of this guilty plea is as follows:

                                                  _DE_
                                              _____
                                          Defendant's
                                          Initials

Rachel E. Zimarowski, Esq.
August 5, 2024                    Re: Donald A. Ennis
Page 2

<u>Count One (Wire Fraud)</u>

a.    Imprisonment for a period of 20 years;

b.    A fine of $250,000, or twice the gross pecuniary
      gain or twice the gross pecuniary loss resulting
      from defendant's conduct, whichever is greater;

c.    A term of supervised release of 3 years;

d.    A mandatory special assessment of $100 pursuant to
      18 U.S.C. § 3013; and

e.    An order of restitution pursuant to 18 U.S.C. §§
      3663A and 3664, or as otherwise set forth in this
      plea agreement.

<u>Count Two (Wire Fraud)</u>

a.    Imprisonment for a period of 20 years;

b.    A fine of $250,000, or twice the gross pecuniary
      gain or twice the gross pecuniary loss resulting
      from defendant's conduct, whichever is greater;

c.    A term of supervised release of 3 years;

d.    A mandatory special assessment of $100 pursuant to
      18 U.S.C. § 3013; and

e.    An order of restitution pursuant to 18 U.S.C. §§
      3663A and 3664, or as otherwise set forth in this
      plea agreement.

_____
Defendant's
Initials

Rachel E. Zimarowski, Esq.
August 5, 2024                              Re: Donald A. Ennis
Page 3

#### Total Maximum Penalty

    a.    Imprisonment for a period of 40 years;

    b.    A fine of $500,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    c.    A term of supervised release of 3 years;

    d.    A mandatory special assessment of $200 pursuant to 18 U.S.C. § 3013; and

    e.    An order of restitution pursuant to 18 U.S.C. §§ 3663A and 3664, or as otherwise set forth in this plea agreement.

    4.    **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Mr. Ennis will tender a check or money order to the Clerk of the United States District Court for $200, which check or money order shall indicate on its face the name of defendant and the case number.  The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing.  Mr. Ennis will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Mr. Ennis fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Mr. Ennis.

    5.    **RESTITUTION.** Notwithstanding the offense of conviction, Mr. Ennis agrees that he owes restitution in the amount of $500,965.70 and agrees to pay such restitution, with interest as allowed by law, to the fullest extent financially feasible. In aid of restitution, Mr. Ennis further agrees as follows:

_____
Defendant's
Initials

Rachel E. Zimarowski, Esq.
August 5, 2024                          Re: Donald A. Ennis
Page 4

(a)    Mr. Ennis agrees to fully assist the United States in
       identifying and locating any assets to be applied toward
       restitution and to give signed, sworn statements and
       testimony concerning assets upon request of the United
       States.

(b)    Mr. Ennis will fully complete and execute, under oath,
       a Financial Statement and a Release of Financial
       Information on forms supplied by the United States and
       will return these completed forms to counsel for the
       United States within seven calendar days from the date
       of the signing of this plea agreement.

(c)    Mr. Ennis agrees not to dispose of, transfer or otherwise
       encumber any real or personal property which he
       currently owns or in which he holds an interest.

(d)    Mr. Ennis agrees to fully cooperate with the United
       States in the liquidation of assets to be applied towards
       restitution, to execute any and all documents necessary
       to transfer title of any assets available to satisfy
       restitution, to release any and all right, title and
       interest he may have in and to such property, and waives
       her right to exemptions under the Federal Debt
       Collection Procedures Act upon levy against and the sale
       of any such property.

(e)    Mr. Ennis agrees not to appeal any order of the District
       Court imposing restitution unless the amount of
       restitution imposed exceeds the amount set forth in this
       plea agreement.  However, nothing in this provision is
       intended to preclude the Court from ordering Mr. Ennis
       to pay a greater or lesser sum of restitution in
       accordance with law.

6.    **PAYMENT OF MONETARY PENALTIES.** Mr. Ennis authorizes the
Financial Litigation Program in the United States Attorney's
Office to obtain a credit report from any major credit reporting

_DE_
Defendant's
Initials

Rachel E. Zimarowski, Esq.
August 5, 2024                    Re: Donald A. Ennis
Page 5

agency prior to sentencing in order to assess his financial
condition for sentencing purposes.  Mr. Ennis agrees not to object
to the District Court ordering all monetary penalties (including
the special assessment, fine, court costs, and any restitution
that does not exceed the amount set forth in this plea agreement)
to be due and payable in full immediately and subject to immediate
enforcement by the United States. So long as the monetary penalties
are ordered to be due and payable in full immediately, Mr. Ennis
further agrees not to object to the District Court imposing any
schedule of payments as merely a minimum schedule of payments and
not the only method, nor a limitation on the methods, available to
the United States to enforce the judgment.

     Mr. Ennis authorizes the United States, through the Financial
Litigation Program, to submit any unpaid criminal monetary penalty
to the United States Treasury for offset in accordance with the
Treasury Offset Program, regardless of the defendant's payment
status or history at that time.

     In addition to any payment ordered by the Court, Mr. Ennis
shall pay all monies received from any source other than earned
income, including but not limited to, lottery winnings, gambling
proceeds, judgments, inheritances, and tax refunds, toward the
court ordered restitution or fine.

     Mr. Ennis agrees that if he retains counsel or has appointed
counsel in response to the United States' efforts to collect any
monetary penalty, he shall immediately notify the United States
Attorney's Office, Attention: Financial Litigation Program, 300
Virginia Street E., Suite 4000, Charleston, West Virginia 25301,
in writing and shall instruct his attorney to notify FLP
immediately of his representation.

     7.   **COOPERATION.**  Mr. Ennis will be forthright and truthful
with this office and other law enforcement agencies with regard to
all inquiries made pursuant to this agreement, and will give
signed, sworn statements and grand jury and trial testimony upon
request of the United States.  In complying with this provision,

_____
                    Defendant's
                    Initials

Rachel E. Zimarowski, Esq.
August 5, 2024                          Re: Donald A. Ennis
Page 6

Mr. Ennis may have counsel present except when appearing before a grand jury.

8.  **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Mr. Ennis, and except as expressly provided for in paragraph 10 below, nothing contained in any statement or testimony provided by him pursuant to this agreement, or any evidence developed therefrom, will be used against him, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

9.  **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Mr. Ennis for any violations of federal or state laws. The United States reserves the right to prosecute Mr. Ennis for perjury or false statement if such a situation should occur pursuant to this agreement.

10. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Mr. Ennis stipulate and agree that the facts comprising the offense of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

Mr. Ennis agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by him, and he is subsequently tried for his conduct alleged in the information and other relevant conduct, as more specifically described in the Stipulation of Facts, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Mr. Ennis or of any of his witnesses, or in rebuttal of any testimony introduced by him or on his behalf. Mr. Ennis knowingly and voluntarily waives, see United States v. Mezzanatto, 513 U.S. 196 (1995), any right he has

_____
Defendant's
Initials

Rachel E. Zimarowski, Esq.
August 5, 2024                           Re: Donald A. Ennis
Page 7

pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Mr. Ennis understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

11. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Mr. Ennis agree that the following provisions of the United States Sentencing Guidelines apply to this case.

Counts One and Two of the Information:

    USSG §2B1.1

    Base offense level                              7
    (§2B1.1(a)(1))

    Loss greater than $250,000                  + 12
    (§2B1.1(b)(1)(G))

    Abuse of position of trust                  + 2
    (§3B1.3)

    Adjusted offense level                         21

The United States and Mr. Ennis acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the

                                    *DE*
                                Defendant's
                                Initials

Rachel E. Zimarowski, Esq.
August 5, 2024                                    Re: Donald A. Ennis
Page 8

Court's calculation of the appropriate guideline range.

    12. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Mr. Ennis knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. Mr. Ennis also knowingly and voluntarily waives any right to seek appellate review of any claim or argument that (1) the statute of conviction of 18 U.S.C. § 1343 is unconstitutional, and (2) Mr. Ennis conduct set forth in the Stipulation of Facts (Plea Agreement Exhibit B) does not fall within the scope of 18 U.S.C. § 1343.

    The United States also agrees to waive its right to appeal any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

    Mr. Ennis also knowingly and voluntarily waives the right to challenge his guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

    The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

    13. **WAIVER OF FOIA AND PRIVACY RIGHT.** Mr. Ennis knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the

_____
Defendant's
Initials

Rachel E. Zimarowski, Esq.
August 5, 2024                        Re: Donald A. Ennis
Page 9

investigation or prosecution of this case, including without any
limitation any records that may be sought under the Freedom of
Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974,
5 U.S.C. § 552a, following final disposition.

    14. **FINAL DISPOSITION.** The matter of sentencing is within
the sole discretion of the Court. The United States has made no
representations or promises as to a specific sentence. The United
States reserves the right to:

    (a)   Inform the Probation Office and the Court of all relevant
facts and conduct;

    (b)   Present evidence and argument relevant to the factors
enumerated in 18 U.S.C. § 3553(a);

    (c)   Respond to questions raised by the Court;

    (d)   Correct inaccuracies or inadequacies in the presentence
report;

    (e)   Respond to statements made to the Court by or on behalf
of Mr. Ennis;

    (f)   Advise the Court concerning the nature and extent of Mr.
Ennis's cooperation; and

    (g)   Address the Court regarding the issue of Mr. Ennis's
acceptance of responsibility.

    15. **VOIDING OF AGREEMENT.** If either the United States or
Mr. Ennis violates the terms of this agreement, the other party
will have the right to void this agreement. If the Court refuses
to accept this agreement, it shall be void.

    16. **ENTIRETY OF AGREEMENT.** This written agreement
constitutes the entire agreement between the United States and Mr.
Ennis in this matter. There are no agreements, understandings,

_____
*DE*

Defendant's
Initials

Rachel E. Zimarowski, Esq.
August 5, 2024                    Re: Donald A. Ennis
Page 10


or recommendations as to any other pending or future charges
against Mr. Ennis in any Court other than the United States
District Court for the Southern District of West Virginia.

    Acknowledged and agreed to on behalf of the United States:


                    WILLIAM S. THOMPSON
                    United States Attorney

          By:    *Erik S Goes*

                    ERIK S. GOES
                    Assistant United States Attorney

ESG/lab


                                    *DE*
                                _____
                                Defendant's
                                Initials

Rachel E. Zimarowski, Esq.
August 5, 2024                          Re: Donald A. Ennis
Page 11


I hereby acknowledge by my initials at the bottom of each of the
foregoing pages and by my signature on the last page of this
eleven-page agreement that I have read and carefully discussed
every part of it with my attorney, that I understand the terms of
this agreement, and that I voluntarily agree to those terms and
conditions set forth in the agreement.  I further acknowledge that
my attorney has advised me of my rights, possible defenses, the
Sentencing Guideline provisions, and the consequences of entering
into this agreement, that no promises or inducements have been
made to me other than those in this agreement, and that no one has
threatened me or forced me in any way to enter into this agreement.
Finally, I am satisfied with the representation of my attorney in
this matter.

_____          ___8-8-24_____
Donald A. Ennis                            Date Signed
Defendant

_____          ___8-5-24_____
Rachel E. Zimarowski, Esq.                 Date Signed
Counsel for Defendant




                                           _____DE_____
                                           Defendant's
                                           Initials

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                   CRIMINAL NO. _____
                                     18 U.S.C. § 1343

DONALD A. ENNIS

I N F O R M A T I O N

The United States Attorney charges:

BACKGROUND FOR THE FIRST SCHEME TO DEFRAUD

At all relevant times:

    1.   Defendant DONALD A. ENNIS purchased a residence in or
around Ridgeview Way in St. Albans, Kanawha County, West Virginia
(hereinafter "Residence") on or about October 18, 2018.

    2.   Defendant DONALD A. ENNIS purchased his Residence with
the assistance of a mortgage company known by the United States
Attorney (hereinafter "Mortgage Company") located in Parkersburg,
Wood County, West Virginia. As a term and condition of the
mortgage, the Mortgage Company required defendant DONALD A. ENNIS
to insure the Residence for loss.

    3.   To comply with this term and condition of the mortgage,
defendant DONALD A. ENNIS insured his Residence with an insurance
company known to the United States Attorney that was headquartered
in Bloomington, Illinois, with offices located throughout the
United States (hereinafter "Insurance Company").

4.     Defendant   DONALD   A.   ENNIS   secured   a   residential insurance policy XXXXX0501 (hereinafter "Insurance Policy") that insured defendant DONALD A. ENNIS' Residence for a maximum value of $161,100 for the dwelling and $120,825 for the contents for loss in the event of several contingencies, including fire. The Insurance Policy specifically excluded intentional acts of loss or damage by defendant DONALD A. ENNIS.

5.     The Insurance Policy had effective dates from on or about November 8, 2020, through on or about November 8, 2021. In consideration for this Insurance Policy, defendant DONALD A. ENNIS paid an annual premium to the Insurance Company of approximately $979.36.

6.     Defendant DONALD A. ENNIS maintained a checking account at City National Bank (account No. XXXXX9871).

7.     City National Bank was a financial institution as defined by the Federal Deposit Insurance Act, within the meaning of 18 U.S.C. § 20.

8.     The Mortgage Company, the Insurance Company and City National Bank were all engaged in, and the activities of which affected, interstate commerce.

<u>THE FIRST SCHEME TO DEFRAUD</u>

9.     From on or about February 15, 2021, through on or about June 23, 2021, at various locations within the Southern District of West Virginia including, but not limited to, St. Albans, Kanawha

**PLEA AGREEMENT EXHIBIT "A"**

County, West Virginia and elsewhere, defendant DONALD A. ENNIS knowingly devised and intended to devise a scheme and artifice to defraud the Insurance Company and obtain money and property from the Insurance Company by means of materially false and fraudulent pretenses, representations, and promises.

<u>MANNER AND MEANS FOR CARRYING OUT THE SCHEME</u>

10. At some time prior to devising his scheme to defraud, DONALD A. ENNIS committed an act of arson by deliberately setting fire to his Residence on or about February 15, 2021. Fire suppression efforts failed to extinguish the fire at the Residence. The resulting fire completely consumed defendant DONALD A. ENNIS' Residence and its contents.

11. It was part of the scheme to defraud that, on or about February 15, 2021, defendant DONALD A. ENNIS contacted the Insurance Company, fraudulently reporting the fire as an accident. The Insurance Company then began the process of receiving a claim. The Insurance Company assigned a Claims Adjuster to investigate the claim, evaluate and process the loss, and pay the claim if it was appropriate to do so.

12. It was further a part of the scheme to defraud that defendant DONALD A. ENNIS placed a series of electronic claims via the internet with the Insurance Company from February 21, 2021, to March 19, 2021, fraudulently claiming losses resulting from the fire. The Insurance Company processed the losses and

electronically transferred funds by interstate commerce to the Claims Adjuster, who presented the claims checks to defendant DONALD A. ENNIS to satisfy defendant DONALD A. ENNIS's claims.

13.  It was further a part of the scheme to defraud that once defendant DONALD A. ENNIS received the payments for the claims from the Insurance Company, the funds were deposited in defendant DONALD A. ENNIS'S City National Bank Account No. XXXXX9871.  In making these deposits, defendant DONALD A. ENNIS fraudulently enriched himself by using the funds that he obtained from the Insurance Company for his own personal use and benefit.

14.  At least one claims check was paid directly by the Insurance Company to the Mortgage Company, satisfying the remainder of the mortgage for defendant DONALD A. ENNIS's Residence.

15.  As a result of DONALD A. ENNIS'S wire fraud scheme, defendant DONALD A. ENNIS fraudulently obtained over $347,237.70 of the Insurance Company's money in satisfaction of defendant DONALD A. ENNIS's fraudulent claims relating to residential fire.

<u>COUNT ONE</u>

16.  From on or about February 15, 2021, through on or about May 7, 2021, at or near St. Albans, Kanawha County, West Virginia, and within the Southern District of West Virginia and elsewhere, defendant DONALD A. ENNIS, having devised and intending to devise a scheme and artifice to defraud the Insurance Company and to obtain money and property by means of materially false and

fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce writings, signs, signals, pictures and sounds, that is, a series of fraudulent claims of loss associated with the arson at his Residence that were electronically filed via interstate wire transmission with the Insurance Company by the defendant DONALD A. ENNIS beginning on or about February 21, 2021, in the total amount of approximately $347,237.70, said electronically transmissions resulting in the payment of multiple claims by the Insurance Company for defendant DONALD A. ENNIS's Residence and belongings.

In violation of Title 18, United States Code, Section 1343.

<u>THE SECOND SCHEME TO DEFRAUD</u>

17.    From some time prior to March 19, 2020, through on or about September 18, 2022, at various locations within the Southern District of West Virginia including, but not limited to, Tornado and St. Albans, Kanawha County, West Virginia and elsewhere, defendant DONALD A. ENNIS, knowingly devised and intended to devise a scheme and artifice to defraud a volunteer fire department known to the United States Attorney ("Fire Department") and obtained money and property from the Fire Department by means of materially false and fraudulent pretenses, representations, and promises.

<u>BACKGROUND FOR THE SECOND SCHEME TO DEFRAUD</u>

At all relevant times:

18.    From at least 2009, defendant DONALD A. ENNIS worked as a volunteer fireman for the Fire Department.  The Fire Department was located in or around Tornado, Kanawha County, West Virginia and operated as a 501(c)(3) non-profit organization.

19.    The Fire Department provided fire suppression services to West Virginia persons and communities in or around the Tornado, Kanawha County, West Virginia area, and elsewhere.  The Fire Department relied on multiple individuals to perform the fire suppression services and to administratively run the Fire Department.

20.    The Fire Department was funded by an annual assessment as well as receiving monies from the Kanawha County Commission, as

well as other grants, donations, and aid-in-kind.

21.   Defendant DONALD A. ENNIS worked for the Fire Department as its Finance and Operations Manager. In that capacity, defendant DONALD A. ENNIS had access to the Fire Department's Truist Bank debit card, that is, card number XXXX XXXX XXXX 6676 ("Debit Card"). The Debit Card use was restricted to purchases made for and on behalf of the Fire Department.

22.   Truist was a financial institution as defined by the Federal Deposit Insurance Act, within the meaning of 18 U.S.C. § 20 and Truist was engaged in, and the activities of which affected, interstate commerce.

<u>MANNER AND MEANS FOR CARRYING OUT THE SECOND SCHEME</u>

23.   It was part of the scheme to defraud that defendant DONALD A. ENNIS committed the following acts, including, but not limited to using the Fire Department's Debit Card to conduct internet transactions and to purchase personal items, goods, services, and products for himself of equipment and items that were unrelated to the Fire Department's mission. Defendant DONALD A. ENNIS also used the Debit Card to make Automated Teller Machine (ATM) cash withdraws for his own personal use and benefit.

24.   It was part of the scheme to defraud that, on or about March 25, 2020, defendant DONALD A. ENNIS purchased a Jeep Hidden Winch Mount Kit using the Fire Department's Debit Card for an online purchase from HK Offroad. The purchase totaled approximately

**PLEA AGREEMENT EXHIBIT "A"**

$356.30. HK Offroad was located in Duarte, California. Defendant DONALD A. ENNIS used this kit for his personal vehicle.

25.   It was further part of the scheme to defraud that on or about September 5, 2020, defendant DONALD A. ENNIS purchased various products from JB Custom Fabrication online via PayPal using the Fire Department's Debit Card. The purchase totaled approximately $438.58. JB Custom was located in Salem, Oregon. Defendant DONALD A. ENNIS used these products on his personal vehicle.

26.   It was further part of the scheme to defraud that, on or about September 22, 2020, defendant DONALD A. ENNIS purchased an ARB Compressor and Tire Inflation kit from Boost Products online via PayPal using the Fire Department's Debit Card. The purchase totaled approximately $356.30. Boost Projects was located in San Diego, California. Defendant DONALD A. ENNIS used this product on his personal vehicle.

27.   It was further part of the scheme to defraud that, on or about October 5, 2020, defendant DONALD A. ENNIS purchased a pair of braided Stainless Brake Lines for a Jeep kit from Summit Racing online via PayPal using the Fire Department's Debit Card. The purchase totaled approximately $131.13. Summit Racing was located in Tallmadge, Ohio. Defendant DONALD A. ENNIS used these products on his personal vehicle.

28.   It was further part of the scheme to defraud that, on or about January 3, 2021, defendant DONALD A. ENNIS purchased a pair

**PLEA AGREEMENT EXHIBIT "A"**

of Front Upper Coil Spring Retainers from Iron Rock Offroad online via PayPal using the Fire Department's Debit Card. The purchase totaled approximately $385.29. Iron Rock Offroad was located in Shakopee, Minnesota. Defendant DONALD A. ENNIS used these products on his personal vehicle.

29. As a result of this wire fraud scheme, defendant DONALD A. ENNIS fraudulently obtained over $153,728.00 of the Fire Department's funds through purchases made using the Debit Card or ATM cash withdrawals using the Debit Card.

<u>COUNT TWO</u>

30. From on or about March 19, 2020, through on or about September 28, 2022, at or near St. Albans and Tornado, Kanawha County, West Virginia, and within the Southern District of West Virginia and elsewhere, defendant DONALD A. ENNIS, having devised and intending to devise a scheme and artifice to defraud the Fire Department and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did knowingly transmit and cause to be transmitted by means of wire and radio communications in interstate commerce writings, signs, signals, pictures and sounds, that is, by fraudulently using the Fire Department's Debit Card to purchase automotive parts and accessories for the personal use and enrichment of defendant DONALD A. ENNIS from automotive venders throughout the United States, as

well as using the Fire Department's Debit Card to make various ATM cash withdraws, with said transmissions of the payments for said products and monies traveling across interstate lines.

In violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

1.    The allegations contained in this Information are hereby realleged and incorporated by reference for the purpose of giving notice of forfeiture pursuant to 18 U.S.C. §§ 981, 982 and 28 U.S.C. § 2461(c).

2.    Notice is hereby given of 18 U.S.C. §§ 981, 982 and 28 U.S.C. § 2461(c).    Under §2461(c), criminal forfeiture is applicable to any offense for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C).

The following property is subject to forfeiture in accordance with Sections 981, 982 and/or 2461(c):

      a.    all property which constitutes or is derived from proceeds of the violations set forth in this Information;

      b.    all property involved in such violations or traceable to property involved in such violations; and

      c.    if, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant's to the extent of the value of the property described in (a) and (b).

The following property is subject to forfeiture on one or more grounds stated above: a forfeiture money judgment in the amount of at least $500.965.70, such amount constituting the proceeds of the violations set forth in this Information.

WILLIAM S. THOMPSON
United States Attorney

By: _____

ERIK S. GOES
Assistant United States Attorney

**PLEA AGREEMENT EXHIBIT "A"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                          CRIMINAL NO. 2 24-cr 129

DONALD A. ENNIS

## STIPULATION OF FACTS

The United States and Donald A. Ennis (hereinafter "I," "me," and "my") stipulate and agree that the facts comprising the offense of conviction in the two-count Information in the Southern District of West Virginia, and the relevant conduct for that offense, include the following:

### BACKGROUND

I do not dispute the United States could prove the following background information:

1.    I purchased a residence in or around Ridgeview Way in St. Albans, Kanawha County, West Virginia (hereinafter "Residence") on or about October 18, 2018.

2.    I purchased this Residence with the assistance of a mortgage company known by me (hereinafter "Mortgage Company") located in Parkersburg, West Virginia. As a term and condition of the mortgage, the Mortgage Company required me to insure the Residence for loss.

3.    To comply with this term and condition of the mortgage, I insured my Residence with an insurance company known to me that was headquartered in Bloomington, Illinois, with offices located throughout the United States (hereinafter the "Insurance Company").

4.    I secured a residential insurance policy XXXXX0501 (hereinafter "Insurance Policy") that insured my Residence for a maximum value of $161,100 for the dwelling and $120,825 for the contents for loss in the event of several contingencies, including



fire.  The Insurance Policy specifically excluded intentional acts of loss or damage by me.

5.    The Insurance Policy had effective dates from on or about November 8, 2020, through on or about November 8, 2021. In exchange for this Insurance Policy, I paid an annual premium to the insurance company of approximately $979.36.

6.    I maintained a checking account at City National Bank (account No. XXXXX9871).

7.    I do not dispute that City National Bank was a financial institution as defined by the Federal Deposit Insurance Act, within the meaning of 18 U.S.C. § 20.  I also do not dispute that the Mortgage Company, the Insurance Company, and City National Bank were all engaged in, and the activities of which affected, interstate commerce.

<u>THE FIRST SCHEME TO DEFRAUD</u>

8.    From on or about February 15, 2021, through on or about June 23, 2021, in St. Albans, Kanawha County, West Virginia (and elsewhere), I knowingly devised a scheme to defraud the Insurance Company and obtain money and property from the Insurance Company by means of materially false and fraudulent pretenses.

<u>GENERAL MANNER AND MEANS FOR CARRYING OUT THE FIRST SCHEME</u>

9.    Prior to devising the scheme, I intentionally set fire to my Residence. Afterward, it was part of the scheme that I committed the following acts, including, but not limited to, filing a series of fraudulent insurance claims with the Insurance Company treating the loss as an accident when it was an intentional and deliberate act by me.

<u>SPECIFIC INSTANCES OF FRAUDULENT CONDUCT</u>

10.    Prior to devising the scheme, I deliberately set fire to my Residence on or about February 15, 2021. Though the fire department responded, the fire suppression efforts did not extinguish the fire at my house. The resulting fire consumed my Residence and the contents.  The Residence and its contents were a total loss.

DE

11.    On or about February 15, 2021, I contacted the Insurance Company fraudulently reporting the fire as an accident and began the process of filing a claim.  The Insurance Company assigned a Claims Adjuster to investigate my claim, evaluate and process the loss, and pay the claim if it was appropriate to do so.

12.    I placed a series of electronic claims with the Insurance Company from February 21, 2021, to March 19, 2021, fraudulently claiming losses resulting from the fire.  I do not dispute that these claims traveled in interstate commerce.  The Insurance Company processed the losses. I do not dispute that the Insurance Company electronically transferred funds by interstate commerce to the Claims Adjuster, who presented the claims checks to me to satisfy my claim.

13.    Once the Insurance Company's funds were received by me, they were deposited in my City National Bank account. In making these deposits, I fraudulently enriched myself by using the funds that I obtained from the Insurance Company for my own personal use and benefit.

14.    At least one claims check was paid directly by the Insurance Company to the Mortgage Company, satisfying the remainder of the mortgage for my home.

15.    As a result of this wire fraud scheme, I obtained over $347,237.70 of the Insurance Company's proceeds in satisfaction of my fraudulent claims relating to the fire at my Residence.

<u>THE SECOND SCHEME TO DEFRAUD</u>

16.    From some time prior to March 19, 2020, through about September 18, 2022, at Tornado and St. Albans, Kanawha County, West Virginia and elsewhere, I knowingly devised a scheme to defraud a volunteer fire department and obtain money and property from the volunteer fire department by materially false and fraudulent pretenses.

<u>BACKGROUND FOR THE SECOND SCHEME TO DEFRAUD</u>

I do not dispute that the United States could prove the following background information:

17.    From at least 2009, I worked as a volunteer fireman for a volunteer fire department known to me that was located in Tornado, Kanawha County, West Virginia (hereinafter "Fire

**PLEA AGREEMENT EXHIBIT "B"**

3

*DE*

Department"). I do not dispute that the Fire Department operated as a 501(c)(3) non-profit organization.

18.    The Fire Department provided fire suppression services to West Virginia communities in or around the Tornado, West Virginia area. The Fire Department relied on a number of individuals to perform the fire suppression services and to administratively run the Fire Department.

19.    I worked for the Fire Department as its Finance and Operations Manager. In that capacity, I had access to the Fire Department's debit cards and regularly worked as the accountant. I had access to the Fire Department's Truist Bank debit card, that is, XXXX XXXX XXXX 6676 ("Debit Card"). The Debit Card use was restricted to purchases made for and on behalf of the Fire Department.

20.    I do not dispute that Truist was a financial institution as defined by the Federal Deposit Insurance Act, within the meaning of 18 U.S.C. § 20 and Truist was engaged in, and the activities of which affected, interstate commerce.

GENERAL MANNER AND MEANS FOR CARRYING OUT THE SECOND SCHEME

21.    It was part of the scheme that I committed the following acts, including, but not limited to, using the Fire Department's debit card to make numerous personal purchases of equipment and items that were unrelated to the Fire Department's mission. I made these fraudulent purchases from March 19, 2020, to September 28, 2022. These purchases were done by electronic transmission of monies throughout the United States. Goods and products were sent from vendors throughout the United States to me.

These fraudulent purchases were used for my personal vehicle and include the following:

| Approximate Date | Specific Instances of Fraudulent Conduct |
|---|---|
| On or about 3/25/2020 | Online purchase of approximately $356.30 from located in Duarte, California, HK for Offroad, a Jeep Hidden Winch Mount Kit. |

**PLEA AGREEMENT EXHIBIT "B"**

DE

| Approximate Date | Specific Instances of Fraudulent Conduct |
|---|---|
| On or about 9/5/2020 | Online purchase, via PayPal, of approximately $438.58 from JB Custom Fabrication, located in Salem, Oregon, for various products. |
| On or about 9/22/2020 | Online purchase, via PayPal, of approximately $356.30 from Boost Products, located in San Diego, California, for an ARB Compressor and Tire Inflation kit. |
| On or about 10/5/2020 | Online purchase, via PayPal, of approximately $131.13 from Summit Racing, located in Tallmadge, Ohio, for a Jeep kit. |
| On or about 1/3/2021 | Online purchase, via PayPal, of approximately $385.29 from Iron Rock Offroad, located in Shakopee, Minnesota, for a pair of Front Upper Coil Spring Retainers. |

I also used the Debit Card to make a number of ATM withdraws for my personal benefit from March of 2020 to September 2022. I do not dispute that the use of the Fire Department's ATM card caused transmissions by electronic wire that were in interstate commerce. By my conduct, I fraudulently enriched myself by using the funds that I illegally obtained from the Fire Department for my own personal use and benefit.

22.   As a result of this wire fraud scheme, I fraudulently obtained over $153,728.00 of the Fire Department's funds by using the Fire Department's Debit Card and to make personal purchases and ATM withdraws.

23.   As a result of both fraud schemes, I unjustly enriched myself by at least $500,965.57 of monies I was not entitled to receive.

This Stipulation of Facts does not contain each and every fact known to me and to the United States concerning my involvement in the charge set forth in the Information.

**PLEA AGREEMENT EXHIBIT "B"**

5

DE

Stipulated and agreed to:

_____          _____
DONALD A. ENNIS                                     8-8-24
Defendant                                                 Date

_____          _____
RACHEL E. ZIMAROWSKI                           8-9-24
Counsel for Defendant                                Date

_____          _____
ERIK S. GOES                                          8/12/2024
Assistant United States Attorney              Date

**PLEA AGREEMENT EXHIBIT "B"**

6